IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. _____

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

MARCUS ALTY,

JEANAIT MATHURIN,

PRESTIGE TAX SERVICES, INC., d/b/a
JUST TAX SERVICES, LLC, and

EXCELLENT TAX SERVICES"LLC" d/b/a
EXCELLENT TAX SERVICES,

        Defendants.

## <u>COMPLAINT FOR PERMANENT INJUNCTION</u>

The United States complains and alleges against Marcus Alty, Jeanait Mathurin, Prestige

Tax Services, Inc. ("Prestige Tax Services"), d/b/a Just Tax Services, LLC ("Just Tax Services"),

and Excellent Tax Services"LLC" [sic][1] d/b/a Excellent Tax Services ("Excellent Tax

Services"), (collectively, "Defendants") as follows:

1.      The United States brings this action to permanently enjoin Defendants, and all

persons and entities in active concert or participation with Defendants, from directly or

indirectly:

---

[1] The entity name as recorded with the Florida Secretary of State includes quotation marks around "LLC" and no space between "Services" and "'LLC'."

(a)     Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(b)     Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(c)     Owning, managing, assisting, or working at a business that prepares or assists in the preparation of tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents;

(d)     Transferring, selling, or assigning their customer lists and/or other customer information;

(e)     Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695, and/or 6701; and

(f)     Engaging in conduct that substantially interferes with the proper administration and enforcement of the tax laws.

2.     This action also seeks an order, under 26 U.S.C. § 7402(a), requiring Defendants to disgorge to the United States the unlawful profits they have obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims.

3.      This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States. It is commenced at the direction of the Attorney General of the United States.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

5.      Venue is proper in this Court pursuant to 26 U.S.C. §§ 7407(a) and 7408(a), and 28 U.S.C. § 1391, because Defendants prepare tax returns within this judicial district, Prestige Tax Services and Excellent Tax Services have their principal place of business within this judicial district, and a substantial part of the events giving rise to these claims occurred within this judicial district.

## DEFENDANTS

6.      Prestige Tax Services is a Florida corporation with its principal place of business located at 2300 Palm Beach Lakes Blvd., Ste. 207, West Palm Beach, Florida 33409. Until March 2020, Prestige Tax Services maintained an address at 2800 North Military Trail, Suite 106, West Palm Beach, Florida 33409.

7.      Prestige Tax Services also does business under the name Just Tax Services, LLC. Just Tax Services, LLC was created in October, 2019.

8.      Excellent Tax Services"LLC" is a Florida corporation formed in 2018 with its principal place of business located at 900 Oscelola Dr., Suite 201, Office L, West Palm Beach, Florida, 33409.

3

9.      The registered agent and president of Excellent Tax Services"LLC" is Whirley Mondesir. Mondesir was an employee of Defendants Marcus Alty and Jeanait Mathurin at Prestige Tax Services in 2018, but has since left the company.

10.      Excellent Tax Services"LLC" also does business under the name Excellent Tax Services.

11.      Marcus Alty resides at 12233 67th Street North, Royal Palm Beach, Florida 33412. He prepares tax returns for a fee. Alty is a tax return preparer as defined by 26 U.S.C. § 7701(a)(36).

12.      Alty is the registered agent and director of Prestige Tax Services. Alty was an original member of Just Tax Services.

13.      Jeanait Mathurin resides at 1690 Renaissance Commons Blvd., Apartment 1625, Boynton Beach, Florida 33426. He prepares tax returns for a fee. Mathurin is a tax return preparer as defined by 26 U.S.C. § 7701(a)(36).

14.      Mathurin is an officer of Prestige Tax Services. Mathurin was an original member of Just Tax Services.

15.      Prestige Tax Services and Excellent Tax Services are tax preparation businesses. Alty and Mathurin prepare and file individual tax returns for their clients using these businesses.

16.      Alty and Mathurin started Prestige Tax Services as partners in 2008.

17.      Once they became aware of the IRS's investigation into their tax preparation business, Alty and Mathurin began to use Just Tax Services and Excellent Tax Services to conduct their tax preparation business.

## DEFENDANTS' ACTIVITIES

18.     Defendants operate as a two-person tax preparer group out of a single location. They sometimes had a single employee/assistant, but either Alty, Mathurin, or both prepare the vast majority, if not all, of the returns. Any returns not prepared by Alty or Mathurin are prepared under their direction and close supervision.

19.     Defendants usually do not charge a fee at the time they prepare and file returns for customers. Instead, Defendants take their fees primarily, if not exclusively, out of refunds that customers receive.

20.     Defendants typically do not disclose the amount of their fees to their customers. Their fees are excessive and can exceed $600 for a simple return.

21.     To generate refunds large enough to pay their fees, Defendants often fabricate tax deductions and credits,. Defendants employ numerous schemes to fabricate these deductions and credits, including falsely claiming American Opportunity Tax Credits; claiming fake employee business expenses; falsely claiming fuel tax credits; including fictious Schedule C jobs on customer returns; and falsely claiming earned income tax credits.

22.     The IRS has conducted audits of numerous taxpayers whose returns Defendants prepared. In many of the audits, the customers agreed that the claims that Defendants made were unfounded.

23.     Alty and Mathurin change the identification numbers under which they file returns. Alty and Mathurin file returns without proper identification (operating as "ghost preparers" in the manner described below) to avoid detection. As a result, it is difficult for the IRS to determine the total number of fraudulent returns attributable to them. Thus, the overall tax loss is much higher than the amounts alleged below.

24.     Alty and Mathurin collectively prepare and file over 1,000 returns each year, over 99% of which claim a refund, as shown in the table below which covers the years 2016-2019. Due to Alty and Mathurin's "ghost preparation," the table below likely understates the number of returns Defendants prepared and filed. As IRS scrutiny has increased, Defendants have relied more heavily on "ghost" preparation, which accounts for the drop-off in returns Defendants prepared and filed in 2019. Defendants have continued to file returns, however, just using different entity and preparer names:

| Year | Alty | | Mathurin | |
|---|---|---|---|---|
| | Returns Prepared | Refund Returns | Returns Prepared | Refund Returns |
| 2016 | 704 | 692 | 465 | 462 |
| 2017 | 781 | 758 | 588 | 588 |
| 2018 | 693 | 675 | 709 | 703 |
| 2019 | 68 | 64 | 13 | 13 |
| TOTAL | 2,246 | 2,189 | 1,775 | 1,766 |

25.     As one example of the harm Defendants caused by their schemes, an IRS analysis of 670 tax returns Alty prepared or filed during 2018 estimates a $1,377,180 tax loss attributable to fraudulently-claimed education tax credits alone. Similarly, an IRS analysis of 630 returns Mathurin prepared or filed during 2018 estimates a $1,464,620 tax loss attributable to this same tax scheme.

26.     The IRS has conducted audits of numerous returns Defendants prepared. In many of the audits, the customers met with the IRS and agreed with the auditors that the claims that Defendants made were unfounded.

**Masking Return Preparation**

27.     Anyone who prepares, or assists in preparing, federal tax returns for compensation (herein, a "tax return preparer") is required to have a valid Preparer Tax

Identification Number (PTIN). See https://www.irs.gov/tax-professionals/ptin-requirements-for-tax-return-preparers (permalink available at https://perma.cc/3SBL-Z5HN).

28.     Each tax return preparer must renew their PTIN each year. *Id.*

29.     Tax return preparers must not share a PTIN. Instead, each tax return preparer must have their own PTIN, and each tax return preparer may have only one PTIN. See https://www.irs.gov/tax-professionals/frequently-asked-questions-do-i-need-a-ptin at FAQ No. 4 (permalink available at https://perma.cc/MF5L-WVQG).

30.     Tax return preparers or entities who wish to file tax returns electronically generally need an Electronic Filing Identification Number (EFIN). An EFIN is a number issued by the IRS to individuals or firms that have been approved as authorized IRS e-file providers. It is included with all electronic return data transmitted to the IRS. While PTINs are issued to individuals, an EFIN may be issued to individuals or firms. *Id.* at FAQ No. 8.

31.     The tax return preparer who has primary responsibility for the overall accuracy of the preparation of a tax return must sign the return. 26 C.F.R. § 1.6695-1(b); 26 C.F.R. § 301.7701-15(b)(1).

32.     Section 6109 of the Internal Revenue Code requires return preparers to identify themselves on the returns they prepare for customers by including their preparer tax identification number ("PTIN") on the return. Return preparers that do not identify themselves on returns they prepare for customers are subject to a penalty under 26 U.S.C. §§ 6695(b), (c). The IRS refers to return preparers that do not identify themselves as "ghost preparers."

33.     A court can enjoin a return preparer who continually engages in conduct subject to penalty under § 6695 from preparing returns for others. *See* 26 U.S.C. § 7407.

34.     From 2008 up until early 2019, Prestige Tax Service, Alty, and Mathurin used Alty's EFIN to file tax returns. After being contacted by the IRS, Defendants began to use a different EFIN.

35.     In 2018, Alty and Mathurin asked Mondesir, their employee at the time, to obtain a new EFIN for them. Mondesir obtained an EFIN for Excellent Tax Services and provided it to Alty and Mathurin.

36.     Alty and Mathurin paid Mondesir $20,000 for this new EFIN.

37.     The IRS prohibits the transfer, sale or disposition of EFIN numbers. IRS Publication 3112 (Rev. 10-2019) at 9 (available at https://www.irs.gov/e-file-providers/faqs-about-electronic-filing-identification-numbers-efin, permalink at https://perma.cc/VW5X-SCU5).

38.     Beginning in 2018, Alty and Mathurin began using the EFIN for Excellent Tax Services instead of the EFIN for Prestige Tax Services.

39.     Alty and Mathurin also misappropriated the PTIN of one of their customers, "C1".[2] Due to a previous problem with identity theft, C1 had been instructed by the IRS to obtain a PIN (personal identification number) for the filing of their 2018 tax return. C1 attempted to register online for a PIN. When Alty prepared C1's 2018 return, however, he was unable to use the PIN to file the return. Alty determined that C1 had incorrectly obtained a PTIN instead of a PIN. C1 was unaware that they had obtained a PTIN instead of a PIN. Nonetheless, beginning in 2018, Alty and Mathurin used C1's PTIN instead of their own PTINs to file tax returns for their tax preparation business.

---

[2] To protect the identity of Defendants' customers they are referred to as C1, C2, etc. Defendants will be provided with a key identifying the customers by name.

40.     Alty and Mathurin filed over 1,000 tax returns in 2019 using C1's PTIN.

41.     C1 did not give Alty and Mathurin permission to use the PTIN.

42.     In 2020, Alty and Mathurin began using a PTIN that belongs to another individual.

43.     In 2020, Alty and Mathurin switched to a new EFIN associated with Just Tax Services.

44.     Alty and Mathurin changed PTINs and EFINs to evade detection by the IRS. They began changing the PTINs and EFINs under which they prepared and filed tax returns shortly after they were interviewed by the IRS.

45.     Alty and Mathurin submitted numerous tax returns using other individuals' names and PTINs. The government has been able to determine that Defendants prepared these returns through time-consuming investigations and interviews.

46.     In addition to violating the internal revenue laws, Defendants' conduct makes it difficult for the IRS to detect their illicit preparation activities. It is unknown how many of the returns identified as prepared or filed by others were actually prepared or filed by Defendants.

**Customer complaints**

47.     Defendants' customers have filed complaints with the IRS about Defendants' abusive practices. For example, Alty prepared C2's 2017 return and claimed a bogus education credit. C2 provided an affidavit to the IRS that states in part "claims towards educational fees is not true I'm not attending any school or taking any educational lessons. This is some fraud done by my preparer."

48.     As another example, Prestige Tax Services prepared C3's  2015 and 2016 returns. As to the 2015 return, C3 wrote in a submission to the IRS that "The Preparer added education credits I never went to school or stated I did [sic]." In another submission to the IRS, C3 wrote "Tax Prepared filed 2014 incorrectly, he added credits I did not use. He filed 2015 without my consent and received the refund…When I talked to the IRS he [the IRS] stated that I had filed again with education credits. Again I'm from Jamaica and have not gone to school here…."

49.     Alty prepared C4's 2014 return. In a complaint to the IRS, C4 wrote "He [Alty] diverted money to his account, more than the agreed upon fee. He put education credits, I never told him to put [sic]. He then used the extra money for his higher fee."

50.     Alty prepared C5's 2015 return. In a complaint to the IRS, C5 wrote that "He Marcus Alty add to tax return [sic] that I go to college, which I did not go to college at no ever times [sic]. Marcus Alty do this [sic] without my consent and knowledge." C5 included an e-mail from Alty in which Alty stated "2015 tax papers attached, if they ask you about your school tell them yes you went to schooll [sic] ok becuz [sic, because] I have the documents for the school ( Keiser university) [sic] don't be afraid ok."

51.     Mathurin prepared C6's 2015 return. In a complaint to the IRS, C6 wrote "Jeanait [Mathurin] reported that I attended school in the US which I never did as well as apply for American Opportunity credit." Elsewhere in the complaint C6 wrote "I did some research and requested my transcripts online. I went through the emails that I had sent him and compared it to the transcripts. When I did so I discovered that he did not file one of the W2's…and I saw two deductions on the transcript one said [sic] 'American Opportunity' and the other was about college/school in the United States when I saw this I became upset…"

**American Opportunity Tax Credit**

52.     The American Opportunity Tax Credit is available for eligible education expenses. It has both a refundable and a non-refundable component, meaning that not only can it reduce taxpayers' liability, but it can also in some cases entitle them to a refund greater than the amount of tax paid or a payment from the U.S. Treasury even if no tax is reported.

53.     In part due to the refundable portion, the American Opportunity Tax Credit is subject to heightened due diligence requirements, meaning that preparers need to take extra steps to ensure the customer's eligibility. *See* 26 U.S.C. § 6695(g).

54.     As reflected in the table below, Defendants not only ignore these heightened requirements, but also routinely claim bogus American Opportunity Tax Credits for individuals who either did not attend school or who did attend but did not incur any expenses.

| Customer | Tax Year | Preparer | Amount of False Credits |
|---|---|---|---|
| C7 | 2017 | Alty | $4,000 |
| C8 | 2017 | Alty | $3,440 |
| C2 | 2017 | Alty | $2,408 |
| C5 | 2015 | Alty | $4,000 |
| C9 | 2017 | Math | $4,000 |
| C9 | 2018 | Math | $4,000 |
| C10 | 2017 | Math | $1,500 |
| C10 | 2018 | Math | $1,350 |
| C3 | 2015 | Mat | $3,405 |
| | | | **Total: $28,103** |

55.     All of the AOTCs reflected in the table above are based on fictitious expenses that were not provided by the customers and instead were fabricated by the Defendants. Defendants claimed the credits as a means of increasing refunds despite knowing that their customers were ineligible for the credits.

56.     Alty claimed an education tax credit on C7's 2017 tax return. C7 was unaware that an education tax credit was being reported on their 2017 tax return. C7 did not provide the educational expense amount to Alty. C7 did not discuss any college attendance or provide any school documents or receipts to Alty, and C7 did not complete any documentation with Alty regarding attending any school. C7 had not in fact attended any college or university in either 2016, 2017, or 2018.

57.     Alty claimed an education tax credit on C8s 2017 tax return. C8 was unaware that an education tax credit was being reported on their 2017 tax return. C8 did not provide the educational expense amount to Alty. C8 did not discuss any college attendance or provide any school documents or receipts to Alty, and C8 did not complete any documentation with Alty regarding attending any school. C8 had not in fact attended any college or university in 2017.

58.     Alty claimed an education tax credit on C2's 2017 tax return. C2 filed a complaint with the IRS regarding their 2017 return in which C2 explained that C2 was not attending school or taking any classes. C2 characterized the education credit claim on C2's 2017 return as "fraud".

59.     Alty claimed an education tax credit on C5's 2015 tax return. C5 also filed a complaint with the IRS regarding their 2015 return, in which C5 explained that C5 had not attended college that year.  Alty offered to provide false documentation of C5's attendance at "Keiser University," when in fact C5 had never attended that school.

60.     Mathurin claimed an education tax credit on C9's 2017 and 2018 tax returns. C9 did not attend either of the schools for which education credits were claimed on their 2017 and 2018 returns.

61.     Mathurin claimed an education tax credit on C10's 2017 and 2018 tax returns. C10 did not have any education expenses in 2017 or 2018. In fact, C10 has not been to college since 2001. C10 did not advise Mathurin otherwise, and C10 was upset to learn that education credits had been claimed on their return.

62.     Mathurin claimed an education tax credit on C3 2015 tax return. C3 did not go to school in 2015. C3 did not tell Mathurin that they did go to school in 2015. Yet, Mathurin falsely claimed education credits on C3's return for 2015.

**False Employee Business Expenses**

63.     Unscrupulous return preparers sometimes claim business expenses, thereby reducing their clients' tax liability and sometimes generating a refund to which the customers are not entitled. Defendants frequently engage in this scheme, as reflected below.

| Customer | Tax Year | Preparer | Amount of False Expenses |
|---|---|---|---|
| C9 | 2018 | Alty | $11,877 |
| C10 | 2017 | Mathurin | $8,987 |
| C12 | 2017 | Mathurin | $8,911 |
| C9 | 2017 | Mathurin | $6,634 |
| C13 | 2017 | Alty | $10,514 |
| | | Total: $46,923 | |

64.     Alty claimed employee business expenses of $11,877 on C9's 2018 income tax return, consisting of $8,477 for vehicle expenses and $3,400 for other business expenses. C9 did not report these expenses to Alty, and C9 was not aware of how these expenses were determined or included on their return.

65.     Mathurin claimed employee business expenses of $8,987 on C10's 2018 income tax return, consisting of $8,123 of vehicle expense and $1,728 of meals expenses. C10 did not

have any such expenses, and they did not advise Mathurin of any such expenses. C10 did not own a vehicle, as C10 had lost their license.

66.     Alty claimed employee business expenses of $8,911 on C12's 2017 income tax return, consisting of $8,371 of vehicle expenses and $1,080 of meals and entertainment expenses. C12 did not discuss any such expenses with Alty. C12 works at a single location and C12 did not incur these expenses.

67.     Mathurin claimed $6,634 in employee business expenses for a vehicle on C9's 2017 income tax return. C9 did not inform Mathurin of any such expenses.

68.     Alty claimed $10,514 in false employee business expenses on C13's 2017 income tax return. C13 told Alty that C13 did not have any unreimbursed business expenses.

**Fuel tax credit**

69.     The fuel tax credit is available to taxpayers who operate farm equipment or other off-highway business equipment or vehicles.

70.     Off-highway business use is any use of fuel in a trade or business or in an income-producing activity where the equipment or vehicle is not registered and not required to be registered for use on public highways. Public highways include all federal, state, county, and city roads and streets.

71.      IRS Publication 225 provides the following examples of qualifying off-highway fuel use: (1) in stationary machines such as generators, compressors, power saws, and similar equipment; (2) for cleaning purposes; and (3) in forklift trucks, bulldozers, and earthmovers.

72.     Because of its extremely limited availability and in light of widespread abuse, the IRS listed the fuel tax credit in its 2019 list of the "dirty dozen" scams. The IRS noted that it is a "tax benefit generally not available to most taxpayers." IRS webpage, *Avoid improper claims for*

*business credits; topic makes this year's IRS "Dirty Dozen" list* at section Fuel Tax Credit

Scams, available at https://www.irs.gov/newsroom/avoid-improper-claims-for-business-credits-

topic-makes-this-years-irs-dirty-dozen-

list#:~:text=The%20Fuel%20Tax%20Credit%20is,not%20available%20to%20most%20taxpayer

s.&text=Fraud%20involving%20the%20Fuel%20Tax,in%20a%20penalty%20of%20%245%2C0

00 permalink at https://perma.cc/WSN6-R8RT.

73.    Nonetheless, Defendants have frequently claimed the credit on behalf of

customers who do not qualify, as demonstrated below.

| Customer | Tax Year | Preparer | Amount of False Credits |
|---|---|---|---|
| C9 | 2018 | Mathurin | $366 |
| C14 | 2017 | Alty | $641 |
| C14 | 2018 | Alty | $637 |
| | | | Total: $ 1,644 |

74.    C9 did not tell Mathurin that he had fuel expenses. C9 worked in service jobs and

commuted in a personal vehicle to work.

75.    C14 did not tell Alty that he had fuel expenses. C14 was not aware that fuel tax

credits had been claimed on C14's 2017 and 2018 returns. C14 worked in a service job and

commuted to and from work.

**Fictitious Schedule C Income and Expenses**

76.    Unscrupulous return preparers sometimes fabricate Schedule C self-employment

income and expenses for customers, which can reduce their tax liability and sometimes generate

a refund to which the customers are not entitled.

77.    Defendants engage in this scheme. For example, Mathurin falsely claimed that C9

was a taxi driver, and invented $4,233 in income to make this false business seem legitimate and

paired it with $8,963 in bogus expenses. C9 did not drive a taxi and was not self-employed. C9 worked in service jobs and commuted with a personal vehicle to and from those jobs. On the 2018 Schedule C for C9 , Mathurin deducted $6,726 in car and truck expenses, and $2,237 in "other" expenses (fuel expenses), even though C9 had not told Mathurin that C9 had those expenses and had not told Mathurin that C9 was self-employed.

78.     Mathurin added false Schedule C expenses to C15's 2017 return. C15 reported their income as an Uber driver on their Schedule C.  However, C15 never discussed any expenses with Mathurin or provided any expense amounts to Mathurin. Nonetheless, Mathurin falsely added expenses of $15,990 to C15's Schedule C, including $5,350 of car and truck expenses, $1,356 of repair and maintenance expenses, $1,288 of deductible meals and entertainment, and $7,996 of other expenses. These false expenses resulted in a loss being reported on C15's Schedule C.

**Earned Income Tax Credit**

79.     The earned income tax credit ("EITC") is a refundable tax credit available to taxpayers who earn income below certain levels. The amount of credit is based on the taxpayer's income, number of dependents, and filing status. Because the EITC is a refundable credit, in certain circumstances it can entitle a taxpayer to a refund greater than the amount of tax paid, or even a payment from the U.S. Treasury even if no tax is reported.

80.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income. To illustrate, the EITC for individuals who filed as single, head of household, or qualifying widower and had one dependent child for 2017 increased as income increased between $1 and $10,000. It then

decreased as income increased beyond $18,350, with no credit available once income exceeded $39,600. For individuals with married filing jointly status with one dependent child, the amount of the credit increased as income increased between $1 and $10,000. It then decreased as income increased beyond $23,950, with no credit available once income exceeded $45,200. For 2017, the maximum EITC was $6,318 and was available to eligible individuals who earned between $14,000 and $23,950 and had three dependent children. Some tax preparers who manipulate reported income to maximize EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot" or "golden range."

81.     Given the size of the credit and its refundable nature, EITC claims are subject to heightened due diligence requirements. *See* 26 U.S.C. § 6695(g).

82.     One common form of EITC fraud is to create bogus Schedule C or household help ("HSH") income, or "phantom" income, in order to maximize the credit.

83.     Alty and Mathurin fabricate phantom income for their clients in order to claim bogus EITCs.

84.     Alty added a Schedule C to C16's 2017 tax return in which Alty falsely claimed that C16 had a babysitting business. Alty claimed $4,887 in phantom income for C16. C16 did not work as a babysitter and was not aware that Alty had added a Schedule C to C16's return. C16's 2017 return includes a claim for a $1,563 EITC.

85.     Mathurin overstated the wages on C18's 2017 return in order to fraudulently increase C18's EITC. NH confirmed their wages were limited to the amounts listed on C18's W-2s for 2017, which totaled $8,388. Mathurin reported wages of $15,390, which increased the EITC to the "sweet spot" amount. C18 was unaware that this additional income had been

reported and C18 was unaware of how Mathurin determined the reported income amount in excess of the W-2s.

86.     Mathurin underreported income on C17's 2017 return by omitting the income from one of C17's W-2s for that year. Because C17's income was higher than the "sweet spot" range, this underreporting increased the EITC. C17 had provided all of their W-2s to Mathurin.

### Unconscionable fees

87.     Defendants charge unconscionably high fees to prepare tax returns, often through added fees that can be charged without customers' knowledge. Defendants charge up to $600 to prepare and file fraudulent tax returns with unnecessary and bogus forms and schedules attached, when they should have honestly prepared a basic Form 1040 tax return for a fraction of the cost.

88.     The high fees are a strong incentive for Defendants to prepare and file fraudulent returns claiming excessive refunds based on bogus claims.

89.     The fees can pose a significant financial hardship for customers. If they are audited, customers may be required to pay back the improper refunds that they receive. Because Defendants deduct their fees directly from their customers' refunds, customers required to return these improper refunds to the government must also return the portion subtracted as fees. They must cover these amounts out of their own pockets.

### <u>HARM TO THE UNITED STATES</u>

90.     Defendants' pattern of preparing returns that understate their customers' taxes and overstate their refunds, through the schemes described above, has resulted in the loss of significant federal tax revenue.

91.     In many instances, Defendants' fraudulent practices caused the United States to issue refunds that the customers were not entitled to receive.

92.     In addition, the United States has had to bear the substantial cost of examining the returns Defendants have prepared and collecting the understated liabilities and overstated refunds from their customers.

93.     Defendants also harm their customers by charging fees for the preparation of accurate tax returns but instead they prepare tax returns with fabricated or exaggerated items that understate their customers' tax liabilities and claim refunds to which the customers are not entitled. In doing so, Defendants cause their customers to incorrectly report their federal tax liabilities and underpay their taxes.

94.     Apart from the direct harm caused by preparing tax returns that fraudulently understate customers' tax liabilities and overstate their refunds, Defendants' activities undermine confidence in the federal tax system. Their activities encourage noncompliance with the internal revenue laws by failing to confirm with their customers that their returns honestly and accurately reflected the information they provided. Similarly, Defendants' fraudulent use of the EITC undermines public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment.

95.     Defendants' illegal conduct also harms honest tax return preparers because, by preparing tax returns that unlawfully inflate their customers' refunds, Defendants gain a competitive advantage over tax return preparers who prepare returns in accordance with the law. Customers who are satisfied with the tax refunds they receive but are often unaware of Defendants' illegal return preparation practices return to Defendants for subsequent tax seasons.

96.     Defendants' pattern of ghost filing returns makes it difficult for the IRS to investigate their activity and impossible to determine the exact number of returns or the extent of the harm to the United States. The limited number of returns prepared by Defendants described

in this complaint resulted in over $20,000 in underreported tax. Given the number of returns Defendants prepare each year, the IRS estimates that the loss could exceed $5,000,000.

### COUNT I: INJUNCTION UNDER 26 U.S.C. § 7407 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. §§ 6694 AND 6695

97.     The United States incorporates by reference the allegations contained in paragraphs 1 through 95.

98.     Section 7407 of the Internal Revenue Code authorizes a district court to enjoin a person who is a tax return preparer from engaging in certain conduct or from further acting as a tax return preparer. The prohibited conduct justifying an injunction includes the following:

(a)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to an unreasonable position that the preparer knew or should have known was unreasonable;

(b)     Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a tax return preparer who prepares a return that contains an understatement of tax liability or an overstatement of a refund due to willful or reckless conduct;

(c)     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(b), which penalizes a tax return preparer who fails to sign a return;

(d)     Engaging in conduct subject to penalty under 26 U.S.C. § 6695(c), which penalizes a tax return preparer who fails to furnish his identifying number as required under 26 U.S.C. § 6109(a);

(e)      Engaging in conduct subject to penalty under 26 U.S.C. § 6695(g), which penalizes a tax return preparer who does not exercise due diligence in determining eligibility for, among other credits, the American Opportunity Tax Credit; and

(f)      Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

99.      In order for a court to issue such an injunction, the court must find that:

(a)      The tax return preparer engaged in the prohibited conduct; and

(b)      Injunctive relief is appropriate to prevent recurrence of such conduct.

100.      If a tax return preparer's conduct is continual or repeated and the court finds that a narrower injunction would not be sufficient to prevent the preparer's interference with the proper administration of the internal revenue laws, the court may permanently enjoin the person from acting as a tax return preparer. *See* 26 U.S.C. § 7407(b).

101.      Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(a) by preparing returns that understate their customers' tax liabilities and overstate their refunds. As described above, Defendants have prepared returns that claim deductions for expenses that were not incurred by the taxpayers and credits to which the taxpayers are not entitled. Defendants have done so with the knowledge that the positions taken on the returns were unreasonable and lacked substantial authority. Defendants have thus engaged in conduct subject to penalty under 26 U.S.C. § 6694(a).

102.      Additionally, Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by willfully understating customers' tax liabilities and overstating their refunds and by acting with a reckless and intentional disregard of rules and regulations.

21

103.     Defendants have engaged in conduct subject to penalty under 26 U.S.C. §§ 6695(b) and 6695(c) by placing other individuals' names and IRS filing credentials on returns Alty and Mathurin have signed.

104.     Defendants have also engaged in conduct subject to penalty under 26 U.S.C. § 6695(g) by repeatedly failing to exercise due diligence in determining the eligibility of their customers to claim the American Opportunity Tax Credit and the EITC.

105.     Defendants' conduct substantially interferes with the administration of the internal revenue laws. Injunctive relief is necessary to prevent this misconduct because, absent an injunction, Defendants are likely to continue preparing false federal income tax returns.

106.     A narrower injunction would be insufficient to prevent Defendants' interference with the administration of the internal revenue laws. Defendants prepare returns understating their customers' liabilities and overstating their refunds through multiple schemes that report false information on their customers' tax returns, and the IRS may not yet have identified all of the schemes that Defendants use. Failure to permanently enjoin Defendants will require the IRS to spend additional resources to uncover all of their future schemes. The harm resulting from these schemes includes both the expenditure of these resources and the revenue loss caused by the improper deductions and credits Defendants claim on returns they prepare. Accordingly, only a permanent injunction is sufficient to prevent future harm. Each Defendant should be permanently enjoined from acting as a tax return preparer.

**COUNT II: INJUNCTION UNDER 26 U.S.C. § 7408 FOR CONDUCT SUBJECT TO PENALTY UNDER 26 U.S.C. § 6701**

107.     The United States incorporates by reference the allegations contained in paragraphs 1 through 95.

108.     Section 7408 of the Internal Revenue Code authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701, which penalizes a person who aids or assists in the preparation of tax returns that the person knows will result in an understatement of tax liability.

109.     Defendants have engaged in conduct subject to penalty under 26 U.S.C. § 6701 by preparing income tax returns that claim credits and deductions that they knew to be improper, false, and/or inflated.

110.     Additionally, supervisors can violate § 6701 by directing subordinates to make unlawful claims or by knowing that subordinates are making such claims and not attempting to prevent them. *See* 26 U.S.C. § 6701(c). Alty and Mathurin have repeatedly violated this provision by overseeing a tax return preparation business that is rife with fraud.

111.     Defendants' repeated actions fall within 26 U.S.C. § 7408, and injunctive relief is appropriate to prevent recurrence of this conduct.

## COUNT III: INJUNCTION UNDER 26 U.S.C. § 7402 FOR UNLAWFUL INTERFERENCE WITH ENFORCEMENT OF THE INTERNAL REVENUE LAWS

112.     The United States incorporates by reference the allegations contained in paragraphs 1 through 95.

113.     Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

114.     Defendants have repeatedly and continually engaged in conduct that interferes substantially with the administration and enforcement of the internal revenue laws.

115.     If Defendants continue to act as tax return preparers, their conduct will result in irreparable harm to the United States, and the United States has no adequate remedy at law.

116.    Defendants' conduct has caused and will continue to cause substantial tax losses to the United States Treasury, much of which may be undiscovered and unrecoverable. Moreover, unless Defendants are enjoined from preparing returns, the IRS will have to devote substantial and unrecoverable time and resources to identifying and auditing Defendants' customers individually to detect understated liabilities and overstated refund claims.

117.    The detection and audit of erroneous tax credits and deductions claimed on returns Defendants prepare would be a significant burden on IRS resources.

**COUNT IV: DISGORGEMENT UNDER 26 U.S.C. § 7402(a)**

118.    The United States incorporates by reference the allegations contained in paragraphs 1 through 95.

119.    Section 7402(a) of the Internal Revenue Code authorizes a court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

120.    Defendants' conduct substantially interferes with the enforcement of the internal revenue laws. Specifically, Defendants have caused the United States to issue tax refunds to individuals not entitled to receive them. Without Defendants' conduct, the United States would not have issued these bogus refunds.

121.    Defendants have unjustly profited from their misconduct at the expense of the United States. In particular, they frequently subtract their fees from their customers' improper refunds.

122.    Defendants are not entitled to these ill-gotten gains. Using its broad authority under § 7402(a), the Court should enter an order requiring Defendants to disgorge to the United States the unlawful profits (in the form of fees subtracted from customers' tax refunds) they have

obtained for the preparation of federal tax returns that make grossly incompetent, negligent, reckless, and/or fraudulent claims, in an amount to be determined after discovery.

## **RELIEF REQUESTED**

Plaintiff, the United States of America, respectfully prays for the following:

A.      That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct;

B.      That the Court find that Defendants have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.      That the Court find that Defendants have repeatedly and continually engaged in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws and that injunctive relief is appropriate under 26 U.S.C. § 7402(a) and this Court's equitable powers to prevent recurrence of that conduct;

D.      That the Court enter a permanent injunction prohibiting Defendants, any entity through which Defendants conduct business, and all persons and entities in active concert or participation with Defendants from directly or indirectly:

(1)      Preparing, assisting in the preparation of, or directing the preparation of federal tax returns, amended returns, or other tax-related documents or forms, including any electronically submitted tax returns or tax-related documents, for any entity or person other than themselves;

(2)      Filing, assisting in the filing of, or directing the filing of federal tax returns, amended returns, or other tax-related documents or forms,

including any electronically submitted tax returns or tax-related

documents, for any entity or person other than themselves;

(3)    Owning, managing, assisting, or working at a business that prepares or

assists in the preparation of tax returns, amended returns, or other tax-

related documents or forms, including any electronically submitted tax

returns or tax-related documents;

(4)    Transferring, selling, or assigning their customer lists and/or other

customer information;

(5)    Engaging in activity subject to penalty under 26 U.S.C. §§ 6694, 6695,

and/or 6701; and

(6)    Engaging in conduct that substantially interferes with the proper

administration and enforcement of the tax laws.

E.    That the Court enter an order requiring Defendants at their own expense:

(1)    To send by email or certified mail, return receipt requested, a copy of the

final injunction entered against them in this action—as well as a copy of

the Complaint setting forth the allegations as to how they negligently,

recklessly, or fraudulently prepared federal income tax returns—to each

person for whom they prepared federal tax returns, other tax forms, or

claims for refund after January 1, 2018;

(2)    To turn over to the United States copies of all returns, other tax forms, and

claims for refund that Defendants prepared after January 1, 2018;

(3)    To surrender to the Secretary of the Treasury or his delegate any and all

PTINs held by, assigned to, or used by Defendants pursuant to 26 U.S.C.

§ 6109, as well as any electronic filing identification numbers held by, assigned to, or used by them;

(4)     To provide the United States a list of the names, Social Security numbers, addresses, phone numbers, and email addresses of each person for whom Defendants prepared tax returns, other tax forms, or claims for refund after January 1, 2018;

(5)     To prominently post a copy of the injunction in Defendants' places of business where tax returns were prepared by them or their employees, contractors, or franchisees;

(6)     To post for one year, on all social media accounts and websites used to advertise Defendants' tax preparation services, a statement that they have been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the injunction that the Department of Justice may issue;

(7)     To deliver a copy of the injunction to Defendants' employees, contractors, franchisees, and vendors;

(8)     To file a sworn statement with the Court evidencing Defendants' compliance with the foregoing directives within forty-five (45) days of entry of the final injunction in this action; and

(9)     To keep records of Defendants' compliance with the foregoing directives, which may be produced to the Court, if requested, or the United States pursuant to paragraph G, *infra*;

F.     That the Court ender an order, pursuant to 26 U.S.C. § 7402(a), requiring

Defendants to disgorge to the United States the unlawful profits (the amount of which is to be

determined by the Court) that Defendants have obtained (in the form of fees subtracted from

customers' tax refunds) for the preparation of federal tax returns that make grossly incompetent,

negligent, reckless, and/or fraudulent claims;

G.      That the Court enter an order allowing the United States to monitor Defendants'

compliance with the injunction and to engage in post-judgment discovery in accordance with the

Federal Rules of Civil Procedure; and

H.      That the Court grant the United States such other and further relief as the Court

deems appropriate.

Date:  December 18, 2020

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

By:

**Christopher J. Coulson**
CHRISTOPHER J. COULSON
Florida Special Bar Number A5502672
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Phone:  (202) 353-0061
Facsimile:  (202) 514-4963
Christopher.J.Coulson@usdoj.gov

*Of Counsel*

ARIANA FAJARDO ORSHAN
United States Attorney

JS 44   (Rev. 10/20) FLSD Revised 10/12/2020

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*  NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a)  PLAINTIFFS

United States of America

## DEFENDANTS

Marcus Alty, Jeanait Mathurin, Prestige Tax Ser

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Palm Beach
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:      IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Chris J. Coulson, PO Box 14198, Washington DC 20044 202353061

Attorneys *(If Known)*

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☑ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excl. Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☑ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Re-filed *(See VI below)*    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district *(specify)*    ☐ 6 Multidistrict Litigation Transfer    ☐ 7 Appeal to District Judge from Magistrate Judgment    ☐ 8 Multidistrict Litigation – Direct File    ☐ 9 Remanded from Appellate Court

## VI.  RELATED/ RE-FILED CASE(S)

(See instructions): a) Re-filed Case ☐YES ☐NO    b) Related Cases ☐YES ☑ NO

JUDGE:                                                   DOCKET NUMBER:

## VII.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
26 USC 7402, 7407, 7408 injunction and disgorgement

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE      December 18, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY : RECEIPT #**              AMOUNT              IFP              JUDGE              MAG JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked. Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit**. Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

**VI.** **Related/Refiled Cases**. This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

**VII.** **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VIII.** **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No. _____ |
| | ) |
| Marcus Alty; Jeanait Mathurin; Prestige Tax | ) |
| Services; Excellent Tax Services"LLC" d/b/a | ) |
| Excellent Tax Services, also d/b/a Just Tax Services | ) |
| LLC | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Marcus Alty
                                       12233 67th Street North
                                       Royal Palm Beach, Florida 33412

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Chris J. Coulson
                                       Trial Attorney, U.S. Department of Justice, Tax Division
                                       P.O. Box 14198
                                       Ben Franklin Station
                                       Washington, DC 20044
                                       Tel: 202.353.0061; E-mail: Christopher.j.coulson@usdoj.gov

        If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

                                                           *CLERK OF COURT*

Date: _____          _____
                                                    *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____, a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | ) Civil Action No. |
| | ) |
| Marcus Alty; Jeanait Mathurin; Prestige Tax | ) |
| Services; Excellent Tax Services"LLC" d/b/a | ) |
| Excellent Tax Services, also d/b/a Just Tax Services | ) |
| LLC | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Jeanait Mathurin
1690 Renaissance Commons Blvd.
Apartment 1625
Boynton Beach, Florida 33426

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Chris J. Coulson
Trial Attorney, U.S. Department of Justice, Tax Division
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044
Tel: 202.353.0061; E-mail: Christopher.j.coulson@usdoj.gov

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*

                                         _____
                                              *Printed name and title*


                                         _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Marcus Alty; Jeanait Mathurin; Prestige Tax | ) | |
| Services; Excellent Tax Services"LLC" d/b/a | ) | |
| Excellent Tax Services, also d/b/a Just Tax Services | ) | |
| LLC | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Prestige Tax Services, Inc.
2300 Palm Beach Lakes Blvd., Ste. 207
West Palm Beach, Florida 33409

Registered Agent: Marcus Alty
12233 67TH STREET NORTH
ROYAL PALM BEACH, FL 33412

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Chris J. Coulson
Trial Attorney, U.S. Department of Justice, Tax Division
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044
Tel: 202.353.0061; E-mail: Christopher.j.coulson@usdoj.gov

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____                    _____

                                                   *Server's signature*

                                         _____

                                                   *Printed name and title*

                                         _____

                                                   *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| v. | )     Civil Action No. |
| | ) |
| Marcus Alty; Jeanait Mathurin; Prestige Tax | ) |
| Services; Excellent Tax Services"LLC" d/b/a | ) |
| Excellent Tax Services, also d/b/a Just Tax Services | ) |
| LLC | ) |
| _Defendant(s)_ | ) |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Excellent Tax Services"LLC"
900 Oscelola Dr., Suite 201, Office L
West Palm Beach, Florida, 33409

Registered Agent: Whirley Mondesir
1800 N Congress ave., 3512
Boynton Beach FL 33426

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Chris J. Coulson
Trial Attorney, U.S. Department of Justice, Tax Division
P.O. Box 14198
Ben Franklin Station
Washington, DC 20044
Tel: 202.353.0061; E-mail: Christopher.j.coulson@usdoj.gov

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____

_____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: